UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JARED SEARLES,

                Plaintiff,

            v.

UNITED STATES OF AMERICA,

                Defendant.

No. 21-CV-6570 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Jared Searles alleges that on July 5, 2020, he was assaulted by multiple fellow inmates while he was in the custody of the Bureau of Prisons ("BOP") at the Metropolitan Correctional Center ("MCC"). Plaintiff contends that MCC employees' failure to provide adequate security in the housing area caused him to suffer extensive and severe injuries. He brings claims against the United States of America under the Federal Tort Claims Act ("FTCA") for negligent hiring, training, retention, and entrustment; negligent infliction of emotional distress ("NIED"); intentional infliction of emotional distress ("IIED"); as well as assault and battery. Now before the Court is Defendant's motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. For the reasons that follow, the motion is granted and this case is dismissed in its entirety, albeit with leave to amend.

## BACKGROUND

    The following facts are drawn from the complaint. They are assumed to be true for the purposes of this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

On July 5, 2020, at some point between 6:00 and 10:00 p.m., Plaintiff was assaulted by multiple fellow inmates at the MCC.[1]  Compl. ¶ 11.  The attackers stabbed him "on the head, facial area, forearm, both elbows and left shoulder."  *Id.* ¶ 12.

MCC correction officers, prison personnel, and other staff members allegedly "[knew] about the improper behavior of multiple inmates" and "allowed" them to attack Plaintiff.  *Id.* ¶¶ 13-14.  They "failed to provide [a] safe and secure housing area" and "failed to provide adequate security in the housing area," thereby creating "an environment of harm condition."  *Id.* ¶¶ 15-17.  Additionally, they allegedly failed to "take any steps to prevent or warn of an unsafe and unsecure housing area" and failed to take remedial actions or implement rules to prevent the assault from happening.  *Id.* ¶¶ 18-19.

According to Plaintiff, the aforementioned MCC staff members—employees of the Government—were "unfit and incompetent for their position."  *Id.* ¶ 27.  He further alleges that they were not "properly hired, retained and trained to proper[ly] control the inmates."  *Id.* ¶ 28.  As a result of the Government's conduct, Plaintiff asserts, he sustained extensive injuries on his head, facial area, forearm, both elbows, and left shoulder, and suffered severe emotional trauma.  *Id.* ¶¶ 20, 42.

## LEGAL STANDARD

A Rule 12(b)(1) motion is a threshold challenge to the Court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when

---

[1] It is unclear to the Court whether Plaintiff suffered one attack at the hands of these unnamed inmates or multiple.  *Compare* Compl. ¶ 11 ("That at or about July 5, 2020 at the Metropolitan Correctional Center, [P]laintiff was stabbed and assaulted by multiple inmates in the minutes between 6:00 pm - 10:00 pm.") *with id.* ¶ 12 ("That on July 5, 2020 *and the days preceding* multiple inmates stabbed [P]laintiff JARED SEARLES on the head, facial area, forearm, both elbows and left shoulder.") (emphasis added).

the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[2] "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* Although a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff . . . jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

To survive a motion to dismiss under Rule 12(b)(6), meanwhile, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As with Rule 12(b)(1) motions, in considering Rule 12(b)(6) motions, courts are required to accept the well-pleaded factual allegations in the complaint as true. *See Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012). However, they "need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Where, as here, a defendant moves for dismissal under Rule 12(b)(1) as well as on other grounds, the Court "should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

## DISCUSSION

### I. The Court Lacks Jurisdiction Over Plaintiff's Assault, Battery, and Negligence Claims

Plaintiff asserts that the Court has jurisdiction over this case because it arises under the FTCA. *See* Compl. ¶ 4 (citing 28 U.S.C. § 1346(b)(1)). For this to be true, it must be demonstrated that the United States has waived its sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued" and "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016). "Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island Radio Co. v. N.L.R.B.*, 841 F.2d 474, 477 (2d Cir. 1988).

The FTCA is an exception to the rule that the United States is typically immune from suit. It authorizes suits against the United States to recover damages "for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). There are, however, several exceptions to the FTCA's waiver of sovereign immunity that operate to limit the Government's liability. A

finding that a statutory exception applies to a claim is "tantamount to holding that the Court lacks [subject matter] jurisdiction" to consider that claim. *Caban v. United States*, 671 F.2d 1230, 1235 n.5 (2d Cir. 1982).

### A. Assault & Battery

Section 2680(h), known as the "intentional torts exception" to the FTCA, provides that the Government's waiver of sovereign immunity shall not apply to claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Notwithstanding this exception, the FTCA permits such claims where federal law enforcement officers are alleged to have committed assault or battery. *See id*; *see also Saleh v. United States*, No. 12-CV-4598 (KBF), 2013 WL 5439140, at *8 (S.D.N.Y. Sept. 27, 2013), *aff'd*, 580 F. App'x 22 (2d Cir. 2014) ("The 'law enforcement proviso' in [28 U.S.C. § 2680(h)] nonetheless subjects the Government to claims against investigative or law enforcement officers arising out of 'assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.'"). But Plaintiff does not allege that any law enforcement officer intentionally put him in fear of, or subjected him to, any kind of harmful or offensive conduct. *See D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 364 (S.D.N.Y. 2017) ("Under New York law, an assault is an intentional placing of another person in fear of imminent harmful or offensive contact. A battery is an intentional wrongful physical contact with another person without consent.") (quoting *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001)). Rather, he alleges that other inmates did so. Accordingly, there is no basis for the Court to assert jurisdiction over Plaintiff's assault and battery claims. *See Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996).

### B.	Negligence

The FTCA's waiver of sovereign immunity is subject to another statutory exception called the discretionary function exception ("DFE"). *See* 28 U.S.C. § 2680(a). Pursuant to the DFE, the Government is not liable for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of . . . an employee of the Government, whether or not the discretion involved be abused." *Id.* The exception is triggered "only if two conditions are met: (1) the acts alleged to be [tortious] must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). In essence, the DFE "precludes claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is the wisest." *Ortiz v. United States*, No. 01 Civ. 4665, 2002 WL 1492115, at *2 (S.D.N.Y. July 11, 2002). "The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 323.

The Government argues that Plaintiff's negligence claims—i.e., negligent hiring, training, retention, and entrustment, as well as NIED—are barred by the DFE. The Court agrees.

### 1.	Discretionary Act

Here, the Government's allegedly negligent conduct—its employment of "unfit and incompetent" prison staff and their failure to provide adequate security in the housing area—was clearly discretionary. An act is discretionary if it is not "compelled by statute"—in other words,

6

if an employee has some "rightful option" other than to "adhere to the directive" of a statute or regulation. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Although 18 U.S.C. § 4042(a) tasks the BOP with the "management and regulation of all Federal penal and correctional institutions" as well as with "provid[ing] for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States," the statute does not dictate how the BOP should fulfill its duties or mandate particular conduct. "The absence of specific guidelines of appropriate conduct by BOP officials in administering these duties, therefore, leaves judgment or choice to the BOP officials." *Scrima v. Hasty*, No. 97 Civ. 8433, 1998 WL 661478, at *3 (S.D.N.Y. Sept. 24, 1998).

Courts have uniformly held that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Rhodes v. Chapman,* 452 U.S. 337, 349 n.14 (1981); *see also Needham v. United States*, No. 17 Civ. 05944, 2018 WL 3611944, at *4 (S.D.N.Y. July 27, 2018) (holding that Section 4042(a) is discretionary because it "does not dictate how the BOP should achieve [the] goals" it lists); *Enigwe v. Zenk*, No. 03-CV-854, 2007 WL 2713849, at *8 (E.D.N.Y. Sept. 14, 2007) (holding that "although prison officials have a statutory duty to protect inmates from harm, in general decisions regarding the best way to safeguard prisoners are discretionary in nature"); *Scrima*, 1998 WL 661478, at *3 (noting that Section 4042(a) "sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates") (quoting *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997)); *Chen v. United States*, No. 09-CV-2306 (ARR), 2011 WL 2039433, at *8 (E.D.N.Y. May 24, 2011) ("FTCA cases have uniformly held that prison decisions regarding security matters are protected by the discretionary function exception."). This discretion extends to decisions regarding whether, and how much, security is necessary to

7

provide. *See Callahan v. United States*, 329 F. Supp. 2d 404, 409 (S.D.N.Y. 2004) ("Several Circuit Courts of Appeal have concluded that security related decisions, including decisions involving how much security to provide and the manner in which to provide it, are the types of public policy judgments that fall within the discretionary function exception."); *Morrison v. United States*, No. 17-CV-6779, 2019 WL 5295119, at *6 (S.D.N.Y. Oct. 18, 2019) ("[Security] decisions at prisons—namely, what policies to enact and how to enforce them—generally fall within the discretionary function exception.").

Likewise, courts in this circuit have also consistently held that "issues of employee hiring, training, supervision, and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." *Riascos-Hurtado v. United States*, No. 09-CV-0003 (RJD) (VMS), 2015 WL 3603965, at *6 (E.D.N.Y. June 5, 2015); *see also Cuoco v. United States Bureau of Prisons*, No. 98 Civ. 9009, 2003 WL 22203727, at *6 (S.D.N.Y. Sept. 22, 2003) (holding that "challenges to the personnel decisions of the United States are barred by the discretionary function exception to the FTCA"); *Needham*, 2018 WL 3611944, at *4 (noting that Section 4042 "does not dictate . . . how [the BOP] should screen, hire, or train its staff"); *Ojo v. United States*, No. 16-CV-4112 (MKB)(LB), 2019 WL 3852391, at *7 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, No. 16-CV-4112 (MKB) (LB), 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019) ("Training and supervising BOP personnel is inherently discretionary and involves matters of public policy."); *Saleh*, 2013 WL 5439140, at *10 (finding that the DFE bars failure to train and supervise claims).

### 2. Public Policy Considerations

For a complaint asserting jurisdiction under the FTCA to survive a motion to dismiss, "it must allege facts which would support a finding that the challenged actions are not the kind of

conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25. Whether an act is "grounded in considerations of public policy or susceptible to policy analysis" is evaluated based on "the nature of the actions taken," rather than "the agent's subjective intent in exercising the discretion." *Id.* at 325. If a statute or regulation confers discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324.

Plaintiff has not set forth facts tending to show that the Government's allegedly negligent acts were not grounded in public policy. To the contrary, numerous courts have found that prison decisions regarding security matters implicate policy considerations such as "economy, efficiency, and safety." *Chen*, 2011 WL 2039433, at *7; *see also Ortiz*, 2002 WL 1492115, at *2 (holding that decisions about "how to house and whether to monitor particular inmates" implicate policy considerations such as "inmate safety, general prison security, . . . and the effective use of limited resources"); *Banks v. United States*, No. 10 CIV. 6613 GBD GWG, 2011 WL 4100454, at *14 (S.D.N.Y. Sept. 15, 2011) ("Courts have consistently held that the decision as to how to respond to inmate violence is one grounded in policy considerations.") (collecting cases); *Ojo*, 2019 WL 3852391, at *7 ("Numerous courts have found [that] decisions regarding prison management, inmate security, and the security of officers are policy considerations."). So too do personnel decisions such as the hiring, retention, and training of correctional staff. *See Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) ("The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition."); *Riascos-Hurtado*, 2015 WL 3603965, at *7 (holding that screening, hiring, and training "require a balancing of competing objectives, and are of the nature and quality that

9

Congress intended to shield from tort liability"); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (stating that hiring decisions "are surely among those involving the exercise of political, social, or economic judgment").

### 3. Negligent Guard Theory

The Second Circuit has recognized a carve-out to the DFE known as the "negligent guard" theory. *See Coulthurst*, 214 F.3d at 109; *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). In the *Coulthurst* case, the Second Circuit held that "an official's 'lazy or careless failure to perform his or her discretionary duties' constitutes negligent conduct that 'neither involves an element of judgment or choice within the meaning of [the DFE] nor [is] grounded in considerations of governmental policy.'" *Banks*, 2011 WL 4100454, at *13 (quoting *Coulthurst*, 214 F.3d at 109-10). And in *Triestman*, it highlighted the difference between the argument that a prison guard staffing policy was "itself negligent," a claim that would be barred by the DFE,[3] and the separate argument that "[prison] employees were negligent in their enforcement of this policy," which would be actionable under a negligent guard theory and which the Circuit held that the *pro se* plaintiff's complaint could be read to

---

[3] The Circuit left open the possibility that courts could assert jurisdiction over a claim that the governmental policy in question falls so far "outside the range of appropriate judgment, such that it can no longer be viewed as an exercise of 'discretion' under the discretionary function exception." *Triestman*, 470 F.3d at 477; *see also Morrison*, 2019 WL 5295119, at *7 (finding that a fatal assault on an MCC inmate represented such "an epic failure to provide a safe and secure environment" on the part of the BOP that its allegedly negligent conduct was "beyond the pale of the discretionary function exception" and that discovery was thus warranted); *Sledge v. United States*, 723 F. Supp. 2d 87, 98 (D.D.C. 2010) (determining that plaintiff's allegations of assault in a "closely supervised and tightly regulated prison environment" warranted discovery into whether "discretionary decisions of the type not grounded in the policy of the regulatory regime" were made by BOP employees). And a claim that "BOP employees failed to adhere to their *own* regulations" involves non-discretionary conduct to which the DFE would also not apply. *Riascos-Hurtado*, 2015 WL 3603965, at *7 (citing *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (emphasis added). As it stands, however, Plaintiff's bare-bones complaint does not advance a set of facts consistent with either argument, which would remove the Government's conduct from the scope of the DFE.

10

assert. 470 F.3d at 475. Plaintiff here, however, has not alleged that a prison employee's carelessness or laziness in carrying out his discretionary duties was the cause of his injuries. Nor is he entitled to the "special solicitude" accorded to the *pro se* plaintiff in *Triestman*, *see id.*, in light of his counseled status.

Accordingly, because Plaintiff's negligence claims fall within the scope of the DFE and because the negligent guard theory is inapplicable to the facts as currently pled, the negligence claims are dismissed for lack of subject matter jurisdiction.[4]

## II. Plaintiff Fails to State an IIED Claim

Unlike other intentional torts like slander and misrepresentation, intentional infliction of emotional distress, or IIED, is not explicitly listed as an exception to the Government's waiver of sovereign immunity for intentional torts under the FTCA. *Saleh*, 2013 WL 5439140, at *11. It is unnecessary, however, for the Court to decide whether the Government's waiver of sovereign

---

[4] Even if the DFE did not apply to those causes of action, the Court would still dismiss them for failure to state a claim. Plaintiff has not stated a negligent hiring, training, retention, or entrustment claim because he has not alleged any facts "relevant to the process that the United States undertook in hiring, screening, and training the correctional personnel in question." *Needham*, 2018 WL 3611944, at *4; *see also Riascos-Hurtado*, 2015 WL 3603965, at *6 (dismissing a negligent hiring claim where the plaintiffs failed to allege facts "suggesting that the BOP's hiring . . . strayed from [] normal considerations").

Nor has Plaintiff stated an NIED claim. A plaintiff may seek recovery for NIED "if she suffers an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Mortise*, 102 F.3d at 696. The NIED claim fails at the outset because Plaintiff has not plausibly alleged that the Government breached a duty owed to him. In New York, a correctional facility "owes a duty of care to safeguard inmates, even from attacks by fellow inmates." *Sanchez v. State of N.Y.*, 99 N.Y.2d 247, 252-53 (2002). The scope of that duty, however, is "limited to risks of harm that are reasonably foreseeable." *Id.* at 253. Although Plaintiff asserts in a conclusory fashion that the MCC's correctional staff failed "to take any steps to prevent or warn of an unsafe and unsecure housing area" and "[knew] about the improper behavior of multiple inmates," he does not explain, for example, what about the housing area made it unsafe, what "improper behavior" the other inmates were engaging in, or how the MCC employees could have known that certain inmates were particularly dangerous. *See Marshall v. United States*, 242 F. Supp. 2d 395, 398 (S.D.N.Y. 2003) ("Without a sufficient showing that [the inmate]'s assault against [the plaintiff] was reasonably foreseeable and avoidable, there is no evidentiary basis to support a rational determination that [the plaintiff] has satisfied the requirements of an action for negligence under New York law."); *Russo v. United States*, No. 20 CIV. 4999 (ER), 2021 WL 5403658, at *5 (S.D.N.Y. Nov. 18, 2021) (dismissing for failure to state a claim where the plaintiff did not "offer any information on how the actions or inactions of BOP employees led to his physical assault").

11

immunity extends to IIED claims because it finds that no IIED claim has been stated. *See Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) ("We need not decide whether Stuto's claim would be barred by any of the exceptions to the FTCA because we agree with the district court that, in any event, the conduct at issue does not meet the stringent requirements for this tort under New York law."); *Saleh*, 2013 WL 5439140, at *11 (noting that a court may analyze a plaintiff's IIED FTCA claim for sufficiency without first determining whether the tort is barred by one of the exceptions to the FTCA).

"Under New York Law, [IIED] has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial possibility of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Saleh*, 2013 WL 5439140, at *11 (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)). "Whether the alleged conduct is sufficiently extreme and outrageous is a matter of law for the courts to decide." *Frigerio v. United States*, No. 10-CV-9086 (SAS), 2011 WL 3163330, at *9 (S.D.N.Y. July 22, 2011). The extreme and outrageous requirement is met "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. This standard is rigorous and difficult to satisfy." *Id.* "Merely stating that the conduct is extreme and outrageous and caused mental suffering, embarrassment, and humiliation without 'specific facts or circumstances' to support plaintiff's allegations 'fails even the liberal pleading standard of Rule 12(b)(6).'" *Ojo*, 2019 WL 3852391, at *7 (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).

Plaintiff's complaint is devoid of facts supporting the conclusions that MCC employees engaged in such extreme or outrageous conduct or that they had the intent to cause him severe

emotional distress. The allegations are—at best—threadbare recitations of an IIED cause of action, which the Court need not accept as true. *See* Compl. ¶¶ 32-36 ("[Defendant's] agents, employees and staff . . . were negligent in committing conduct that intentionally inflicted emotional distress upon plaintiff . . . As a direct and proximate result of the defendant's conduct, plaintiff sustained the damages hereinbefore alleged."). Thus, because Plaintiff has failed to plausibly allege sufficiently egregious conduct and the requisite intent, his IIED claim is dismissed for failure to state a claim.

### III.  Leave to Amend

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend] when justice so requires," although "leave to amend may be properly denied if the amendment would be 'futile,'" *Grullon*, 720 F.3d at 140 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The "usual practice" in this circuit upon granting a motion to dismiss is to permit amendment of the complaint. *See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446-47 (S.D.N.Y. 2014) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). Because it is conceivable that Plaintiff could plead additional facts to remedy some of the deficiencies identified herein—for example, facts that support the conclusion that MCC employees were careless or inattentive in carrying out their duties to maintain a safe and secure housing area, *see Coulthurst*, 214 F.3d at 111, or that the MCC's staffing policy "fell so far outside the range of appropriate judgment that it can no longer be viewed as an exercise of 'discretion,'" *see Triestman*, 470 F.3d at 476—he is granted leave to amend, provided he has a good faith basis for doing so.

## CONCLUSION

For the reasons stated above, the Government's motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate docket entry 8. Should Plaintiff wish to file an amended complaint, he is directed to do so within 30 days of the date of this order.

SO ORDERED.

Dated:   July 20, 2022
         New York, New York

                                                    _____
                                                    Ronnie Abrams
                                                    United States District Judge